THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN J. MYLANDER, Defendant-Appellant.

(No. 54667;

First District—December 27, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Herbert Becker, Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant appeals from a sentence of four to eight years after revocation of probation. On appeal he contends it was error to revoke probation for failure to make restitution and that his sentence was excessive.

On March 25, 1968, John Mylander entered a plea of guilty to three indictments, each charging him with theft by deception. He was properly advised of his rights and further advised that he might be sentenced to one to ten years in prison on each indictment. The defendant persisted in his plea and the court accepted it. The defendant then moved for probation.

On April 15, 1968, the defendant, appearing before the same judge, pleaded guilty to a fourth, similar charge. A hearing was then held in aggravation and mitigation on the four charges.

In mitigation the defendant asked the court to take into consideration his probation report which revealed the following: The defendant is 42 years old, married, with four children. He has been self-employed as a general contractor for 18 years. He has no prior felony convictions.

Defense counsel then painted a picture of a successful business collapsing under economic strain. Defense counsel asked the court to grant probation for the benefit of the innocent victims.

The court in placing the defendant on five years probation stated:

"That that money [restitution] be repaid within the period of probation, that at the end of the first year this matter will again be brought forth before this Court to determine whether or not any effort has been made on behalf of the defendant to make this payment;

\* \* \*

It is the Court's feeling that by sending this man to the penitentiary, and not affording him an opportunity to repay these people, would be working more of a hardship on the victims than it would be on the defendant.

If the defendant refuses to, and in no manner makes any effort satisfactory to this Court, showing that he hasn't made some repayment, substantial repayment, then, of course, it would be the Court's duty at that time to sentence the defendant to the State Penitentiary and it means that I have the right to sentence him to the State Penitentiary for a period of not less than one nor more than ten years on each charge, which means that the defendant could spend a considerable period of time in the State Penitentiary."

The probation orders * included the following conditions: that the defendant shall pay a total sum of $62,230 as total restitution and that he "shall pay no stipulated sum each month, but on or about April 15, 1969, the Probation Department will make a report to the court as to the amount of restitution paid by the defendant," and that the defendant shall make monthly reports to his probation officer.

On April 10, 1969, the Probation Department wrote to the defendant advising him to appear in court on April 15, 1969, as per the conditions of his probation.

On April 15, 1969, the defendant did not appear and a bench warrant was issued for his arrest. Bail was set at $10,000. The warrant was served and on June 25, 1969, the defendant appeared in court and a hearing was held on his violation of probation. Mr. Pines of the Probation Department informed the court that no money had been paid.

At that time Mylander stated, "There's been $6000 that was paid from the proceeds of the sale of my home, and the reason why it wasn't paid through the court is the civil court had given the title to the building to Sterczeks [one of the victims] and then the building was sold and the $6000 was paid."

He stated he last reported to the probation office on June 9 (evidently referring to June 9, 1968, as testified to by the probation officer). He also claimed he was not notified of his court date.

Mylander then requested his bond be reduced, stating:

"There could be another $10,000 paid to the probation department if I finish the building, but I was going to be out here last Thursday, but I had a court date on Thursday, I had a court date on Friday, I had a

---

* There was one order for each indictment, but except for the amount of restitution they were identical.

court date on Monday, and I had one at eleven o'clock this morning in the Civic Center.

That's the reason why they had to pick me up, or I would have reported."

The hearing was continued until September 12, 1969, at which time Jack Moody of the probation department testified as follows: The defendant has made no restitution payments through the department. In June of 1968 the defendant reported to Officer Lavel that he had hurt himself and was in the hospital. In November 1968 he reported to Lavel that he was self-employed as a builder, earning $3500 which he would receive at the end of the week.

The defendant then testified in his own behalf. At the time he had agreed to make restitution he had 26 homes going, part of them the complainants'. The $30,000 home of one of the complaining witnesses is complete, but it will require a civil suit to get possession. The foundation is in for the Menno (one of the complainants) house and they had a mortgage commitment which they failed to sign. A creditor's bill has tied up 26 pieces of property, his trust and a bank account for eight months. He has not been able to make restitution for the 14 months he was on probation. He couldn't make bond and has been incarcerated since November 1968. (We cannot ascertain how long defendant was in jail but he was not in custody when he was "picked up" in June 1969 on the warrant issued on April 15, 1969.)

In January 1969 he had 14 lots in escrow. He had commitments for land mortgages and construction loans on those lots and would have received $96,000 profit on the entire project. The banks cancelled his mortgage when the creditor's bill "hit" him. He was in a financial dilemma, but he did complete a majority of the homes. He took on a partner.

He further stated that when he pleaded guilty he listed $150,000 with the State's Attorney as being due to home owners; that since then others "are sitting in the State's Attorney's office"; that a warrant had been issued on one complaint and that he was held to the Grand Jury and incarcerated in February or March. He also stated that he was in jail "[s]ince June 25th. Then I was in in November."

He could not raise money to make restitution because he could not complete the jobs due to a creditor's bill, judgments against him and cancellation of mortgage commitments.

The court then indicated that its primary concern in granting probation had been for the welfare of the victims; that at that time there was no indication that the terms of the probation would not be fulfilled; and

that defendant was perfectly willing to accept the judgment of the court if the terms and conditions of probation were not met. The court then revoked probation and sentenced defendant.

*Opinion*

■■ In asserting it was error to revoke probation the defendant argues that the trial court by its own actions prevented him from making restitution. He claims he was unable to finish the construction of the many buildings because he was incarcerated and because of other court proceedings involving him and the properties. According to defendant he was not in custody immediately prior to June 25, 1969, since he testified that he was "picked up" after the warrant issued on April 15. At the time probation was granted defendant was released on individual recognizance bonds of $500 on each indictment and, therefore, no funds of defendant were tied up for bail. His other legal difficulties appear to have arisen after probation but there had been no indication to the court at the time probation was granted that defendant did not have sufficient funds to complete his jobs and thereafter make substantial restitution. His arrest on another similar complaint cannot be used to condone his failure to make restitution.

The defendant further asserts that the failure to make restitution cannot be the sole basis for revoking probation. In support of this contention he cites *People v. Harpole*, 97 Ill.App.2d 28, a case in which the defendant's request for probation at trial was denied. In *Harpole* there was a failure to agree on the amount of restitution and probation was not granted.

In the case at bar probation was granted solely to allow restitution. It was the court's concern for the victims that motivated the granting of probation. The court stated at the time it revoked probation:

"The court was quite concerned about the victims in this case. But by the same token I was under the impression the defendant had many of these contracts that could be fulfilled and that it was only a matter of time. There was no indication to the court, though we can be sympathetic with the allegations of the defendant that he has been unable to meet these obligations, there was no indication to the court that these terms and conditions set forth in the probation would not be fulfilled, and that in the event they were not met the defendant was perfectly willing to accept and abide by the ultimate judgment of the court."

The court felt that there was no indication that the chances of defendant making restitution had improved. In fact the record indicates defendant's financial situation had deteriorated.

■■■ The defendant also contends that he paid $6000 in *restitution* in

that the equity court divested him of his interest in his home from the sale of which one of the victims received $6000. This was not a voluntary act but rather an action forced by a court. In addition, the $6000 represented less than 10% of the total restitution owed—clearly not a *substantial* payment which would constitute compliance with the terms of the defendant's probation.

Illinois Revised Statutes 1965, ch. 38, par. 117—3(d) provides:

"If the court determines that a condition of probation has been violated, the court may alter the conditions of probation or imprison the probationer for a term not to exceed the maximum penalty for the offense of which the probationer was convicted."

■■ In *People v. Sims*, 32 Ill.2d 591, 596, the court held that "revoking probation is normally within the discretion of the trial court, and unless that discretion is abused, we will not disturb the order." We find that the trial court did not abuse its discretion in revoking probation.

■■ The defendant's final contention is that his sentence is excessive and should be reduced. We find no merit in defendant's assertion that this was merely a "business failure." The defendant admitted committing four criminal acts. We find no reason to reduce his sentence. *People v. Smith*, 14 Ill.2d 95. See also *People v. Taylor*. 33 Ill.2d 417.

Judgment affirmed.

English, P. J., and LORENZ, J., concur.